UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LASHONDA CORLEY,<br><br>Plaintiff,<br><br>v.<br><br>DENTAL BLISS, et al.,<br><br>Defendants. | Case No. 3:17-cv-01211<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### REPORT AND RECOMMENDATION

This action arises out of pro se Plaintiff Lashonda Corley's employment as a dental assistant with Defendants 1Mosaic, Inc. and Dental Bliss. (Doc. No. 24.) Corley, an African-American woman over the age of forty, alleges that the defendants violated Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., by discriminating against her because of her race and age and terminating her for complaining about that discrimination. (Doc. No. 24.) Before the Court is the defendants' motion for summary judgment (Doc. No. 49), to which Corley has responded in opposition (Doc. Nos. 52, 53); the defendants have replied (Doc. No. 55). Upon consideration of the parties' briefs and the record evidence as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion.

**I. Background**

    **A. Factual Background**[1]

Corley was hired on June 29, 2015, to work as an expanded function dental assistant (EFDA) for 1Mosaic at the Dental Bliss location in Franklin, Tennessee.[2] (Doc. Nos. 51, 52, 54.) Her employment was at will. (Doc. Nos. 51, 51-1, 51-3, 52.) Corley testified that, when she was first hired, she "was allowed to see patients" but that, at some point, she "was no longer allowed to see them on a regular basis." (Doc. No. 51-6, PageID# 431.) Instead, she "was asked to clean out storage areas, remove old equipment, [and] move equipment from one place to another." (*Id.* at PageID# 431–32.) Dr. Susan Couzens is a dentist who worked with Corley at Dental Bliss Franklin. (Doc. No. 51-4.) Corley stated that she told Couzens in September 2015 that she wanted more training, that she "was not allowed to assist [with patients] when [Couzens] wasn't there[,]" and that she "was tired of cleaning out spaces[.]" (Doc. No. 51-6, PageID# 445.) Corley testified that she also met with operations manager Amy Evans and told her, among other things, that she wanted more training and that she "wasn't being allowed to use [her] certifications" as an EFDA. (*Id.* at PageID# 446.) According to Corley, she met with Dr. Couzens again on October 30, 2015, and talked about "how they were treating [her] when nobody was there" and told Couzens that she "really wanted more opportunities to assist" with patients. (*Id.* at PageID# 447.)

Couzens testified that she "requested that ALL staff help with cleaning, decluttering, and improving [an adjacent, empty office] space when [they] did not have patients scheduled." (Doc.

---

[1] The facts in this section are drawn from the parties' exhibits and are undisputed for purposes of summary judgment unless otherwise noted.

[2] The defendants state that 1Mosaic is a dental services organization that recruits, hires, and manages staff at dental practices in Middle Tennessee and that Dental Bliss Franklin has contracted with 1Mosaic to provide these services. (Doc. No. 51-1.)

2

No. 51-4, PageID# 406, ¶ 9 (emphasis in original).) Evans testified that she met with Couzens during a routine visit to the Franklin Dental Bliss Office in October 2015, and that Couzens "voice[d] concerns about Ms. Corley." (Doc. No. 51-5, PageID# 411, ¶ 6.) Specifically, Couzens stated that "Corley seemed disengaged from the rest of the team and practice." (*Id.*) On October 31, 2015, Couzens sent a "weekly update" email to Dental Bliss owner Dr. Michael Atchley and 1Mosaic CEO Chris Mahan stating, among other things, that she "had a long conversation with" Corley the day before and that Corley was "NOT happy." (Doc. No. 51-3, PageID# 402 (emphasis in original).) Couzens said that she had been "coaching" Corley and she believed Corley "ha[d] a lot of talent and potential," but that Corley seemed tense and had "alluded to an undercurrent of drama with" others. (*Id.*) Couzens predicted that that it would "only be a matter of time until" Corley quit. (*Id.*) Evans testified that, around the same time, "Corley began having attendance issues as well as trouble with grooming—including wrinkled scrubs, uncombed hair, and . . . not bath[ing] on occasion." (Doc. No. 51-5, PageID# 411, ¶ 6.)

On Saturday, November 7, 2015, Corley was supposed to meet Couzens at the Dental Bliss Franklin office to unlock the building and assist Couzens with a specially scheduled patient procedure. (Doc. Nos. 51, 51-3, 51-4.) Couzens testified that "Corley did not show for the scheduled appointment" and "did not answer [Couzens's] calls or texts." (Doc. No. 51-4, PageID# 406, ¶ 7.) According to Couzens, she "had to call another employee, who was not a dental assistant, to open the door" and she performed the patient procedure without an assistant. (*Id.*) Couzens said she "did not hear from Ms. Corley until the following Thursday" and that Corley "gave no explanation for her absence." (*Id.*) Corley later told a human resources representative that she "did call the office that [Saturday] morning and spoke to" an employee named Linda. (Doc. No. 51-3, PageID# 368.) Corley "shared with her what happened and asked her, even though

3

it was late, if she thought [Corley] should come [i]n to the office anyway[.]" (*Id.*) Linda told Corley that "she was helping Dr. Couzens and she felt like they were almost finished and probably not going to be there much longer."[3] (*Id.*)

On November 9, 2019, Couzens sent another weekly update email to Atchley and Mahan and mentioned "continued (and perhaps increased) inadequate job performance from" Corley. (Doc. No. 51-3, PageID# 401.) Couzens explained that Corley "did not show" up for the specially scheduled Saturday appointment and that Couzens had to "call[ ] Linda, who thankfully came to let [her] in." (*Id.*) Couzens also mentioned that Corley "came to work with no makeup [on] Wed[nesday] and Thurs[day], and . . . did not stay to help with the moving and organization of the operatories." (*Id.*) Couzens told Atchley and Mahan that she planned to "get with Amy [Evans] about the particulars for documentation of [Corley's] job performance." (*Id.*) Couzens sent another email about Corley to Atchley, Mahan, and Evans on November 15, 2015. (*Id.* at PageID# 400.) "As I have shared with each of you," she wrote, "we would have terminated [Corley's] position immediately after last Saturday." (*Id.*) Couzens further characterized Corley's failure to report for the Saturday appointment as "disrespectful first and foremost to our valued patient and secondly to [Corley's] team[,] [e]specially to Linda and to" Couzens herself. (*Id.*) Couzens suggested "two possible solutions: Strict probation in writing that [Corley] signs or termination." (*Id.*) Couzens and Evans both testified that they met with Corley in the fall of 2015 to discuss their concerns

---

[3] In her response to the defendants' statement of undisputed material facts, Corley attempts to dispute that she was scheduled to assist Couzens on Saturday, November 7, 2019. (Doc. No. 52, PageID# 474 ("A reasonable person inquires how Plaintiff was 'specially scheduled' since . . . Dr. Couzens said in her declaration . . . that she preferred[ ] having [Embry assist her with patient care] . . . ."); *id.* ("A reasonable person inquires why Dr. Couzens . . . did not ask or suggest one of the other dental assistants (Laura or Joyce)[.]").) Although Corley raises these speculative questions, she admits elsewhere in the record that she called the office that day to explain why she was not there and ask if she should come in late. (Doc. No. 51-3.) There is thus no genuine dispute that Corley was scheduled to work on November 7, 2019.

4

about her job performance but said they did not provide her with a formal written review at that time. (Doc. Nos. 51-4, 51-5.)

Evans testified that, after a few months, she continued to receive reports about issues with Corley's employment. (Doc. No. 51-5.) For example, Corley did not report for work on March 9 and 16, 2016.[4] (Doc. No. 52.) Around the same time, Corley spent a day or two working with Dr. Atchley at his office in Hermitage, Tennessee. (Doc. Nos. 51-2, 51-5.) Corley complained to Atchley that she was not getting training, was not assisting with much patient care, and was being asked to complete janitorial tasks like cleaning fish tanks. (Doc. Nos. 51-2, 52.) Atchley testified that he reported Corley's concerns to Couzens, who told Atchley "that all staff had been requested to clean fish tanks, and that Dr. Couzens preferred one of the other assistants due to her superior skills." (Doc. No. 51-2, PageID# 330, ¶ 14.)

On March 23, 2016, Evans presented Corley with a written corrective action review listing purported violations of 1Mosaic policies dating back to October 2015. (Doc. Nos. 51-3, 52.) Among other things, the purported violations included refusal to comply with instructions about ordering supplies; failure to attend staff meetings; poor personal hygiene; failure to report for work; failure to follow the chain of command; and inadequate performance of assigned duties. (Doc. No. 51-3.) On March 31, 2016, Corley emailed a human resources representative to report "a hostile work environment and discrimination tactics against [her] consequently resulting in a

---

[4] Corley has not claimed that she went to work on either March 9, 2016 or March 16, 2016. Instead, in her response to the defendants' statement of undisputed material facts, she faults the defendants for "fail[ing] to expound on the facts of routine practice or norms when a doctor and or patients are not scheduled and the staff are not present[.]" (Doc. No. 52, PageID# 478, 479.) To the extent Corley suggests that the defendants did not expect her to appear at work if she was not scheduled to assist a dentist or see patients, she has not identified any evidence to support that assertion, and the 1Mosaic employee manual that defendants filed in support of summary judgment contradicts that suggestion. (Doc. No. 51-3.) There is thus no genuine dispute of material fact that Corley failed to appear at work on both days.

negative evaluation." (Doc. No. 51-3, PageID# 388.) In early April 2016, 1Mosaic provided Corley with two days of paid time off so that she could prepare a written report of any discrimination. (Doc. No. 52.) On April 10, 2016, Corley submitted a typed response to the corrective action review, offering reasons why each of the purported policy violations was unwarranted. (Doc. No 51-3.) Mahan testified that 1Mosaic conducted "a thorough investigation" and determined that the corrective action review "was well-founded." (Doc. No. 51-1, PageID# 325, ¶ 25.)

Mahan further testified that, "[i]n late April and early May 2016, 1Mosaic received numerous complaints from staff regarding Ms. Corley's continued poor performance, refusal to communicate, refusal to cooperate with staff, and refusal to fulfill job functions." (*Id.* at PageID# 325–26, ¶ 26.) Corley was terminated on May 18, 2018. (Doc. No. 52.)

### B. Procedural History

Corley filed her original complaint in this action on September 1, 2017, alleging discrimination and retaliation under Title VII and the ADEA by Defendant Dental Bliss. (Doc. No. 1.) This Court subsequently granted Corley leave to amend (Doc. No. 23), and Corley filed an amended complaint that added Defendants 1Mosaic, Atchley, Couzens, and Mahan (Doc. No. 24). The defendants filed a motion for judgment on the pleadings. (Doc. No. 38.) The Magistrate Judge recommended that the Court grant in part and deny in part that motion by dismissing Corley's claims against Atchley, Couzens, and Mahan but allowing her claims against Dental Bliss and 1Mosaic to proceed. (Doc. No. 47.) The Court adopted the Magistrate Judge's recommendation. (Doc. No. 48.)

Dental Bliss and 1Mosaic then filed a motion for summary judgment. (Doc. No. 49.) The defendants argue that Corley's discrimination and retaliation claims fail because she has not produced any direct evidence of racial or age discrimination; has not shown that she was replaced

6

by or treated differently than someone of a different race or younger age; and has not shown that the defendants retaliated against her for protected conduct under Title VII or the ADEA. (Doc. No. 50.) 1Mosaic further argues that it had legitimate reasons for terminating Corley, and Dental Bliss argues that it was never Corley's employer and does not qualify as an employer as defined by Title VII and the ADEA. (*Id.*)

Corley responded in opposition to the defendants' motion for summary judgment, arguing that she was the only EFDA "constantly being asked to clean as if she were in a janitorial role" and that a "younger White female employee" named Jackie Embry was treated differently than she was. (Doc. No. 52, PageID# 464.) Corley further argues that, "around September 2015 and October 2015[,] [she] informed management about feeling discriminated against because she is an older Black female . . . ." (*Id.* at PageID# 465.) In response to the defendants' assertions that they fired her for legitimate reasons, Corley generally argues that if the defendants' purported reasons for terminating her were true they would have reprimanded or fired her much sooner. (Doc. No. 52.) The defendants argue in reply that Corley's limited evidence and general arguments are insufficient to defeat summary judgment. (Doc. No. 55.)

**II.     Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine

7

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

**III.    Analysis**

The ADEA and Title VII prohibit employers from discharging or otherwise discriminating any individual with respect to the compensation, terms, conditions, or privileges of her

employment because of her age (under the ADEA), or race, color, religion, sex, or national origin (under Title VII). 29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000e-2(a)(1). Both statutes also prohibit employers from discriminating against any individual in retaliation for opposing such discrimination. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). Because the relevant provisions of both statutes are substantially similar, courts generally analyze discrimination and retaliation claims brought under Title VII and the ADEA under the same legal framework. *Deleon v. Kalamazoo Cty. Rd. Comm'n,* 739 F.3d 914, 918 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 783 (2015); *see also Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 n.15 (6th Cir. 2004) (explaining that "[t]he provisions of the ADEA generally receive an identical interpretation to corresponding provisions of Title VII" (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.2 (6th Cir. 1992))).

At the summary judgment stage, a plaintiff must present either direct or circumstantial evidence of discrimination or retaliation to prevail on claims under Title VII and the ADEA. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination or] retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Because Corley has not presented any such direct evidence, the Court must evaluate her Title VII and ADEA claims under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rogers*, 897 F.3d at 771; *Imwalle*, 515 F.3d at 544. Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must first make out a prima facie case of discrimination or retaliation. *Rogers*, 897 F.3d at 772. If she does so, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory

[or nonretaliatory] reason for its decision." *Id.* (alteration in original) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). If the employer meets its burden, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (quoting *Upshaw*, 576 F.3d at 584).

### A. Employer Status

As a threshold matter, Dental Bliss argues that it does not qualify as an employer under Title VII or the ADEA.[5] (Doc. No. 50.) Title VII only imposes liability on employers with fifteen or more employees, *see Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 351 (6th Cir. 2011) (quoting 42 U.S.C. § 2000e(b)), while the ADEA only imposes liability on employers with twenty or more employees, *see York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982) (quoting 29 U.S.C. § 630(b)). Dental Bliss points to Atchley's affidavit to support its argument that it employs fewer than fifteen individuals and therefore cannot be held liable under either statute. (Doc. No 51.) But Atchley's affidavit does not specify how many people Dental Bliss employs—Atchley states only that "Dental Bliss employs dentists to work at its facility" and "also contracts with 1 Mosaic to provide additional staff to work at the Dental Bliss practice." (Doc. No. 51-2, PageID# 329, ¶ 4.) Dental Bliss therefore has not carried its initial burden to show that there is no genuine dispute of fact regarding whether it qualifies as an employer under Title VII and the ADEA. *See Celotex Corp.*, 477 U.S. at 323.

### B. Race and Age Discrimination

To establish a prima facie case of discrimination based on race or age, Corley must show that: (1) she was a member of a protected class or was at least 40 years old; (2) she suffered an adverse employment action or actions; (3) she was qualified for her position; and (4) she was

---

[5] 1Mosaic concedes that it is considered an employer under both statutes. (Doc. No. 50.)

10

treated less favorably than someone outside the protected class, or someone younger, who was similarly situated. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 456–57 (6th Cir. 2004). The defendants argue that Corley cannot satisfy the fourth requirement. (Doc. No. 50.)

Corley's amended complaint, broadly construed, alleges that she was denied training regarding workplace standards set by the Occupational Safety and Health Administration (OSHA) and assigned to mostly janitorial tasks while Embry, who is white and younger than 40, received OSHA training and was more often asked to assist with patient care. (Doc. No. 24.) In support of their motion for summary judgment, the defendants have presented sworn affidavits from Mahan and Evans attesting that Corley was provided with the "same training opportunities" as every other dental assistant working at Dental Bliss, including Embry. (Doc. No. 51-1, PageID# 323, ¶ 9; Doc. No. 51-5, PageID# 413, ¶ 17.) Specifically, Mahan testified that "1Mosaic records indicate Ms. Embry did not receive OSHA training during Ms. Corley's employment" and that "[a]t no time did Ms. Embry receive any different training than Ms. Corley." (Doc. No. 51-1, PageID# 326, ¶ 30.) Corley testified in her deposition that "no training really started until after" the defendants hired Embry and that she and Embry "both received" training regarding certain dental procedures that Corley "had been asking for . . . ." (Doc. No. 51-6, PageID# 460.) Corley has not offered any other evidence to dispute Mahan's testimony that Embry did not receive more or different training than Corley. She therefore has not shown a prima facie case of race or age discrimination based on denial of training opportunities.

The defendants have also presented sworn evidence from Couzens that, after another dental practice moved out of shared office space in the Dental Bliss Franklin location, she "requested that ALL staff help with cleaning, decluttering, and improving the space when [they] did not have

patients scheduled" and that "[t]his included removing unsightly fish tanks." (Doc. No. 51-4, PageID# 406, ¶ 9 (emphasis in original).) Couzens further attested that she "specifically requested that these tasks be performed by employees when [she] was not in the office and [they] were not examining patients." (*Id.* at PageID# 407, ¶ 9.) Corley states that she believes she was the only dental assistant required to remove the fish tanks (Doc. No. 52) and points to a text message she sent to Couzens telling her that the "[f]ish tanks have been removed!" (Doc. No. 24, PageID# 138.) Corley has not, however, offered any evidence to dispute Couzens's testimony that all staff were asked to assist with similar cleaning tasks. Corley therefore has not shown a prima facie case of race or age discrimination based on disparities in work assignments.

Even if Corley had shown that she was asked to clean more frequently than Embry, Couzens has proffered a nondiscriminatory reason for this difference, explaining that Embry "was a highly skilled, meticulously focused, and organized dental assistant" and that Couzens therefore "preferred" to have Embry "assisting [her] chairside with patients." (Doc. No. 51-4, PageID# 407, ¶ 10.) Evans also testified that "Embry demonstrated outstanding skills and job performance." (Doc. No. 51-5, PageID# 413, ¶ 15.) Corley has not introduced any evidence to suggest that Couzens's stated preference for Embry based on her job performance was pretextual. Consequently, no reasonable jury could find in Corley's favor on her race and age discrimination claims based on disparities in work assignments as compared to Embry.

### C. Retaliation

To establish a prima facie case of retaliation, Corley must demonstrate that: (1) she engaged in protected activity under Title VII and the ADEA; (2) the defendants knew about her exercise of protected rights; (3) the defendants subsequently took an adverse employment action against her; and (4) there was a causal connection between the adverse employment action and the protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *Barrett*, 556 F.3d at 516. The

defendants argue that Corley did not engage in protected activity under either statute and that, even if she had, she cannot show the required causal connection between any such activity and her termination. (Doc. No. 50.)

The Supreme Court has held that retaliation claims under Title VII and the ADEA "must be proved according to traditional principles of but-for causation," which means that a plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Here, Corley would have to prove that she would not have been fired if she had not complained about feeling discriminated against because of her race and age. Based on the record evidence, Corley has not and cannot establish the required causal connection. The defendants have identified several legitimate and nondiscriminatory reasons for terminating Corley and have supported those reasons with specific record evidence. Corley has not offered evidence that contradicts the defendants' proof. For example, there is no genuine dispute that Corley did not report for work as scheduled on November 7, 2015, March 9, 2016, and March 16, 2016. (Doc. No. 52.) Corley's unscheduled absences provide an independent reason for terminating her employment (Doc. No. 51-3, PageID# 339 (explaining that 1Mosaic employees "are employed at the will of the Company and are subject to termination at any time, for any reason, with or without cause or notice")), and Corley offers no evidence to support a finding that her complaints of discrimination were the actual reason. The defendants are therefore entitled to summary judgment on Corley's retaliation claims.

**IV.     Recommendation**

The record in this case demonstrates that Corley's employment with 1Mosaic and Dental Bliss was difficult. However, for purposes of summary judgment, the record does not support Corley's claims that she suffered illegal discrimination because of her race and age. For the reasons

above, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 49) be GRANTED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 25th day of September, 2019.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge